IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**CORNELIUS MARTIN, JR.,**

    Plaintiff,

vs.                                    Case No. 4:14cv380-RH/CAS

**JOHN TIMOTHY SHEEHAN,**

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This case has proceeded solely on Plaintiff Cornelius Martin, Jr.'s claim against Defendant John Timothy Sheehan after the stipulated dismissal of his claim against Defendant McConnaughhay, ECF Nos. 35 and 38, and the stipulated dismissal of his claims against the Keaton Defendants. ECF Nos. 61 and 64.

Mr. Sheehan filed a motion to dismiss, ECF No. 41, and Mr. Martin has filed a response to that motion, ECF No. 53. Mr. Sheehan filed a reply to Mr. Martin's response, ECF No. 55, and Mr. Martin filed a sur-reply. ECF No. 63. The parties were also given leave to supplemental memoranda, ECF No. 68, based on Mr. Martin's assertion that "several

developments in this case have arisen since late July, 2015." *See* ECF No. 65.  The supplements, ECF Nos. 69-70, have also been considered.

**Allegations of Plaintiff's Amended Complaint, ECF No. 8**[1]

Mr. Martin invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), § 1332 (diversity), and § 1367 (supplemental).  ECF No. 8 at 1.  Mr. Martin asserts he is a resident of the State of Georgia and Mr. Sheehan is a resident of Highlands County, Florida.  *Id.* at 2.

The Martin Revocable Living Trust (Trust) was established in 1992 and intended to divide assets among two children, Mr. Martin and his sister Ms. Keaton, and three grandchildren with each beneficiary receiving twenty percent of the Trust.  ECF No. 8 at 4.  The Trust was amended in 2009, giving Ms. Keaton thirty-three percent of the assets and all other beneficiaries approximately sixteen percent.  *Id.*  Mr. Martin contends that Ms. Keaton used "undue influence" on their mother to "change the distribution formula suddenly after 17 years."  *Id.*  It is alleged that the homestead was "to be divided equally between Ms. Keaton and Mr. Martin."  *Id.*  Mr. Martin was named attorney in fact when Ms. Martin signed a Durable Power of Attorney on April 20, 2010.  ECF No. 8 at 8.  The amended complaint alleges it was witnessed by "two subscribing

---

[1] Only the facts relevant to Mr. Martin's claims against Mr. Sheehan are listed.

Case No. 4:14cv380-RH/CAS

witnesses" (Mr. Martin and the notary), ECF No. 8 at 8, although a copy of the Durable Power of Attorney [hereinafter DPOA] submitted with the initial complaint reveals the document was signed by Ms. Mary W. Martin, "in the presence of" Mr. Martin, and was notarized by Lynette T. Eden, a Notary Public for the State of Georgia. ECF No. 1-1 at 10-12. The DPOA was signed on April 20, 2010, in Leon County, Florida. *Id.* at 12.

On December 23, 2010, Ms. Mary W. Martin, was examined by Dr. Barbara Abrams and deemed competent to choose an attorney in fact. ECF No. 8 at 4. On December 26, 2010, Ms. Martin signed another DPOA which appointed Mr. Martin as her attorney in fact. *Id.* at 4. It is alleged that the December 26, 2010, DPOA ratified and reiterated "the choice she made to make Plaintiff Attorney in Fact of the [Trust] on April 20, 2010." *Id.*

Between February and June of 2011, family members communicated with Detective Benedict[2] apparently concerned about possible fraud and theft by Mr. Martin's use of funds from the Trust. *Id.* at 4-5. Prior to the examination of Ms. Martin by Dr. Abrams, Mr. Martin contends that on December 22, 2010, Ms. Keaton contacted the Sheriff's Office to make "false allegations against Mr. Martin" based on advice from Mr. Sheehan

---

[2] Detective Benedict was employed by the Leon County Sheriff's Office. ECF No. 8 at 6.

and Ms. McConnaughhay. *Id.* at 8. Mr. Martin claims that she falsely said he had transferred power of attorney to himself because she knew about the April 20, 2010, DPOA. *Id.*

On February 4, 2011, Detective Benedict was advised that Mr. Sheehan, her mother's attorney, had permission to discuss the Trust with him. *Id.* at 4. In June of 2011, Ms. Keaton indicated to Detective Benedict that "the lawyers," meaning Mr. Sheehan and Ms. McConnaughhay, were sorting out issues with DPOAs, noting the December 26, 2010, was the third Power of Attorney signed by Ms. Martin. *Id.* at 5. The

Mr. Martin advises that Ms. Keaton "accepted the trusteeship of the" Trust on January 6, 2011, and states that document was prepared by Ms. McConnaughhay. *Id.* at 5. Mr. Martin contends that her "Acceptance of Trusteeship was a nullity, a nugatory and of no legal value whatsoever." *Id.* Ms. McConnaughhay advised Ms. Keaton to retain Dr. Abrams to gain control over the Trust. *Id.* Ms. McConnaughhay also opined that Ms. Keaton and not Mr. Martin was the attorney in fact for Ms. Martin. *Id.* at 6.

Although Mr. Sheehan was aware of the Power of Attorney signed by Ms. Martin in December 2010, Mr. Sheehan provided "confidential documents belonging to the" Trust to Detective Benedict on April 5, 2011.

ECF No. 8 at 6, 9.  Mr. Martin contends that "Defendants conspired to deprive Mr. Martin" of his portion of the Trust.  *Id.* at 6.  Moreover, Ms. Keaton allegedly sought Mr. Martin's arrest and he was detained for eight months before charges were dismissed.  *Id.* at 2, 6.  The complaint alleged that Ms. Keaton called the Sheriff's Office based on "advice" provided by Mr. Sheehan and another attorney, Ms. McConnaughhay.  *Id.* at 8.  She allegedly falsely reported that Mr. Martin transferred the power of attorney to himself so that he had access to his mother's bank account.  *Id.*  It appears that his mother, Ms. Martin, was 89 years old at the time and had been diagnosed with Alzheimer's disease.  *Id.*  Mr. Martin claims that his sister knew that Ms. Martin had revoked a durable power of attorney that Ms. Keaton claimed she had and was valid.[3]  *Id.*  He further claims that both Mr. Sheehan and Ms. McConnaughhay were provided copies of the December 26, 2010, durable power of attorney.  *Id.* at 9.

    Mr. Martin alleged that Mr. Sheehan was advised in writing that his client, Mary W. Martin, did not want him to communicate with any of the "Keaton" family members regarding the Trust.  *Id.* at 9.  It is unknown who or when that was communicated to Mr. Sheehan.  Nevertheless,

---

[3] Notwithstanding, the complaint alleged that Ms. Keaton had an undated letter from attorney McConnaughhay "opining that the Durable Power of Attorney negotiated by Ms. Mary W. Martin on April 20, 2010[,] was invalid."  ECF No. 8 at 9.

Case No. 4:14cv380-RH/CAS

Mr. Sheehan allegedly continued to "discuss the private financial records of the" Trust with the Keatons and also voluntary gave financial documents to Detective Benedict. *Id.*

In Count 1, Mr. Martin asserts a RICO claim against Mr. Sheehan pursuant to 18 U.S.C. § 1961, *et seq.* ECF No. 8 at 10. Mr. Martin claims Mr. Sheehan committed mail and wire fraud "with the intent of obtaining property from Mr. Martin . . . in violation of Title 18 U.S.C. § § 1341, 1343." *Id.* He asserts that Mr. Sheehan "committed mail and wire fraud . . . by issuing incorrect opinion letters and disregarding the presence of a valid" durable power of attorney. *Id.* at 11. Count 3 is a claim for legal malpractice against Mr. Sheehan. ECF No. 8 at 12-13. Count 4 is a claim for a violation of Mr. Martin's privacy rights. ECF No. 8 at 13-14.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).[4]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 at 556); *see also* Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified

---

[4] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoted in Twombly, 127 S.Ct. at 1966). The requirements of Rule 8 do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1949. A complaint does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation." 556 U.S. at 678, 129 S.Ct. at 1949. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S., at 555, 127 S.Ct. 1955).

    Courts should take a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6). Iqbal, 556 U.S. at 679, 129 S.Ct. at

1950.  The first consideration is whether the complaint presents "well-pleaded factual allegations" which are entitled to a presumption of truth or, whether, the complaint merely asserts "legal conclusions" which "are not entitled to the assumption of truth."  *Id.* at 679, 129 S.Ct. at 1950.  If the complaint contains factual allegations that are well pled, the second step is to consider whether the non-conclusory factual allegations "plausibly give rise to an entitlement to relief."  *Id.*  If so, a motion to dismiss should be denied.  *Id.*, at 680, 129 S.Ct. at 1950-51 (citations omitted).

**Motion to Dismiss, ECF No. 41**

Mr. Sheehan argues that Mr. Martin's "claims lack legal and factual basis, in large measure because Martin's allegations against Sheehan arise out of Sheehan's legal representation of Martin's deceased mother, Ms. Mary W. Martin."  ECF No. 41 at 2.  Mr. Sheehan contends that Count I is based only on conclusory allegations and vague inferences.  *Id.* at 7.  Moreover, it is argued there is no fraudulent intent alleged or supported by factual allegations.  *Id.* at 10-12.  In addition, a claim for legal malpractice is insufficient because there was no attorney-client relationship between Mr. Sheehan and Mr. Martin.  *Id.* at 12-14.  Finally, the claim for violation of privacy rights is insufficient because Mr. Sheehan is not a government official.  *Id.* at 15.

Case No. 4:14cv380-RH/CAS

**Plaintiff's Response, ECF No. 53**

Mr. Martin "concedes that the RICO counts" brought against Mr. Sheehan should be dismissed. ECF No. 53 at 2. Accordingly, it is recommended that Count 1 of the amended complaint be **dismissed**.

As for Count 3, Mr. Martin contends that he is a "third party intended beneficiary" which is an "exception to the rule of privity . . . ." ECF No. 53 at 3. Mr. Martin asserts that Count 4 is a viable claim because Mr. Sheehan "was a state player working hand in hand with Detective Benjamin Benedict and therefore instrumental in" the asserted violation of the right to privacy. *Id.* at 4-5.

**Defendant's Reply, ECF No. 55**

Mr. Sheehan argues that even if it is accepted that a beneficiary of a revocable living trust could be considered an "intended third-party beneficiary, Mr. Martin's amended complaint does not plead sufficient facts "which, if true, would tend to show any drafting negligence on the part of [Mr.] Sheehan that could give rise to a claim for legal malpractice." ECF No. 55 at 2. It is argued that the basis for this claim is that Mr. Sheehan "rendered an opinion regarding the [Trust's] administration and the legality of [Mr. Martin's] purported power of attorney at the request of his client." *Id.* However, the conflicting power of attorney documents "in no manner

altered or frustrated Mary Martin's testamentary intent" as reflected in the Trust drafted by Mr. Sheehan. *Id.* at 3-4.

Mr. Sheehan also argues that his "involvement with a public official or state actor consisted only of corresponding with [Detective] Benedict of the Leon County Sheriff's Office" and providing copies of documents pertaining to the Trust as requested. *Id.* at 5. "It was manifestly reasonable and within the Florida Rules of Professional Conduct for [Mr.] Sheehan to provide documents requested by a law enforcement officer when his client, Mary Martin, was the alleged victim." *Id.*

**Plaintiff's Sur-reply, ECF No. 63**

Mr. Martin contends that Mr. Sheehan's negligence and legal malpractice is evident in a recent development - the conveyance of a piece of real property (identified as 325 Lake June Drive, Lake Placid, FL) on April 1, 2015. ECF No. 63 at 2-3. Mr. Martin says he learned in late July 2015 that the property was sold and contends that the "property was payment to [himself] for services tendered to the rightful owner of that property, Mary W. Martin." *Id.* at 3.[5] Mr. Martin asserts that the sale of that

---

[5] A DPOA was first signed by Mary Martin on April 20, 2010, which appointed Mr. Martin as her attorney in fact and stated that, for his efforts in managing her property, he "be granted title to the property known as 325 Lake June Drive, Lake Placid, Florida, 33852." ECF No. 1-1 at 10-12. A subsequent DPOA was signed by Ms. Martin on December 26, 2010. ECF No. 1-1 at 14-16. An affidavit of Charlise D. Darby,

property "was completed specifically as a result of the negligence and legal malpractice of [Mr.] Sheehan. *Id.* at 9.

**Analysis**

**a.     Legal Malpractice claim, Count 3**

The contours of this claim as set forth in the amended complaint, ECF No. 8, when separated from Mr. Martin's arguments as to the legality of his DPOAs, are that Ms. Martin was a client of Mr. Sheehan, but Mr. Martin was not. Mr. Sheehan was provided a copy of the December 26, 2010, DPOA, along with copies of unspecified documents pertaining to the allegation of theft by Mr. Martin. *Id.* On April 5, 2011, Mr. Sheehan communicated with Detective Benedict and provided "confidential documents belonging to the" Trust to Detective Benedict.  Mr. Sheehan advised Ms. Keaton to take her concerns about Mr. Martin's conduct to the Sheriff's Office.  *Id.*

Those facts are insufficient to support a claim for legal malpractice. Under Florida law, "[a] cause of action for legal malpractice has three

---

the Notary Public for the second DPOA, states that she was concerned with Mr. Martin being a witness to the DPOA and asked a neighbor to be a witness instead.  ECF No. 63 at 15-16.  Ms. Darby then notarized Ms. Martin's signature and the signatures of the "two subscribing witnesses" who were the neighbor and Ms. Darby.  *Id.*  Under Florida law, "a notary may also serve as a witness . . . ."  <u>Am. Gen. Home Equity, Inc. v. Countrywide Home Loans, Inc.</u>, 769 So. 2d 508, 509 (Fla. 5th DCA 2000).

Case No. 4:14cv380-RH/CAS

elements: (1) the attorney must be employed by or in privity of contract with the plaintiff; (2) the attorney must have neglected a reasonable duty; and (3) the negligence must have resulted in and was the proximate cause of loss to the plaintiff." Dadic v. Schneider, 722 So.2d 921, 923 (Fla. 4th DCA 1998) (citing Brennan v. Ruffner, 640 So.2d 143, 145 (Fla. 4th DCA 1994)). Thus, "[t]o establish legal malpractice, a party must establish that the negligence 'resulted in and was the proximate cause of loss to the plaintiff.'" Dadic, 722 So.2d at 923 (quoted in Pitcher v. Zappitell, 160 So. 3d 145, 148 (Fla. 4th DCA 2015). Mr. Martin was not a client of Mr. Sheehan and there is no need to discuss privity[6] because, on the facts alleged, Mr. Sheehan did not commit an act of negligence nor did Mr. Sheehan cause Mr. Martin any harm.

Mr. Sheehan drafted the Trust agreement and no facts were alleged indicating that document was insufficient. To the contrary, Mr. Martin relies upon the sufficiency of the Trust when he suggests that Ms. Keaton's "Acceptance of Trusteeship was a nullity, a nugatory and of no legal value whatsoever" because she did not comply with terms of the Trust. There are no allegations that Mr. Sheehan is responsible for drafting the DPOAs

---

[6] The supplemental memoranda primairly address the issue of privity. ECF Nos. 69, 70.

that Mr. Martin contends should control these matters. There are also no allegations that Mr. Sheehan rendered an opinion concerning the validity of Mr. Martin's DPOAs.[7] Mr. Sheehan's advice in directing Ms. Keaton to report suspected fraud and theft to law enforcement was appropriate, not negligent. Mr. Sheehan's actions in providing documentation to law enforcement who were engaged in investigating a reported crime is also appropriate. Because the amended complaint does not contain facts sufficient to show a plausible claim for legal malpractice against Mr. Sheehan, the motion to dismiss Count 3, ECF No. 41, should be granted.

**b.    Right of Privacy claim**

Count 4 is brought pursuant to Article 1, Section 23 of the Florida Constitution and the Fourth Amendment of the United States Constitution. ECF No. 8 at 13. The factual basis for this claim is that Mr. Sheehan provided documents concerning the Trust to law enforcement. Mr. Martin contends that doing so violates his rights. He further contends that Mr. Sheehan was transformed into a governmental official by doing so.

---

[7] That allegation was made about conduct of attorney McConnaughhay. ECF No. 8 at 9.

"The United States Constitution does not expressly guarantee a right to privacy, but the Supreme Court has held that a right to privacy does exist within the liberty component of the Fourteenth Amendment." Padgett v. Donald, 401 F.3d 1273, 1280 (11th Cir. 2005) (citing Roe v. Wade, 410 U.S. 113, 152–53, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973)).  Two types of interests are protected by the right to privacy: first, the right to privacy "in avoiding disclosure of certain personal matters" and, second, "personal autonomy in making certain important decisions, such as those involving marriage, contraception, and procreation." Padgett, 401 F.3d at 1280 (citations omitted).

As for the state law claim, "Article I, Section 23 of the Florida Constitution provides a right of privacy from government intrusion absent a compelling state interest." In re Letter of Request for Judicial Assistance from Tribunal Civil de Port-au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987) (citing Winfield v. Div. of Pari-Mutuel Wagering, Dep't of Bus. Reg., 477 So. 2d 544, 547 (Fla. 1985) (stating "[t]he right of privacy does not confer a complete immunity from governmental regulation and will yield to compelling governmental interests.").  The Florida Supreme Court has concluded that Florida's right to privacy provides "more protection from governmental intrusion than that afforded by the United States

Case No. 4:14cv380-RH/CAS

Constitution."  State v. Sarmiento, 397 So.2d 643, 645 (Fla. 1981) (quoted in Winfield, 477 So. 2d at 548).  Nevertheless, for either claim there must first be a "legitimate expectation of privacy in" the records allegedly disclosed.  477 So. 2d at 548.  Furthermore, an individual's right to privacy must give way to a "compelling state interest."  Id. (holding that there is a "legitimate expectation of privacy in financial institution records," but "that the state's interest in conducting effective investigations in the pari-mutuel industry is a compelling state interest"); see also Limbaugh v. State, 887 So. 2d 387, 389 (Fla. 4th DCA 2004) (concluding "that the State's authority to seize such records by a validly issued search warrant is not affected by any right of privacy in such records.").

   Although the records at issue in Winfield and Limbaugh were disclosed because of a subpoena or warrant, that distinction is immaterial here because Mr. Martin did not have a legitimate expectation of privacy in the records disclosed.  That is so because the records pertained to the Trust.  The Trust was not Mr. Martin's personal property and the fact that Mr. Sheehan voluntarily provided documents concerning the Trust to law enforcement does not violate his right to privacy.  In light of this conclusion, there is no need to determine whether or not Mr. Sheehan should be

considered to have worked as a joint participant with the State. The motion to dismiss should be granted as to Count 4.

## Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Sheehan's motion to dismiss, ECF No. 41, be **GRANTED**, and all claims raised against Defendant Sheehan in Plaintiff's amended complaint, ECF No. 8, be **DISMISSED**.

**IN CHAMBERS** at Tallahassee, Florida, on February 10, 2016.

    s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.